UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FLOYD MAYWEATHER, JR., an individual,

                Plaintiff,

- against -

DANIEL GEIGER, an individual; INSIDER, INC., a Delaware corporation; and DOES 1-100, inclusive,

                Defendants.

No. 1:25-cv-03617-JPO

---

**MEMORANDUM OF LAW OF PLAINTIFF FLOYD MAYWEATHER, JR. IN OPPOSITION TO MOTION OF DEFENDANTS DANIEL GEIGER AND INSIDER, INC.'s MOTION FOR JUDGMENT ON THE PLEADINGS**

**PORTALE RANDAZZO**

Richard A. Portale
245 Main Street
White Plains, NY 10601
rportale@portalerandazzo.com

**SAMINI BLOCK APC**

Bobby Samini (*pro hac vice application pending*)
650 Town Center Drive
Suite 1500
Costa Mesa, CA 92626
(949) 724-0900
bobby.samini@saminilaw.com
ted.spanos@saminilaw.com

*Attorneys for Plaintiff*
*FLOYD MAYWEATHER, JR.*

1

**PRELIMINARY STATEMENT**

The Motion[1] should be denied because it purports to dispute facts that are subject to discovery, invites credibility determinations, and relies improperly on extrinsic material.  None of this is proper at the pleading stage under applicable legal standards.  Accepting as true all well-pleaded allegations in the Complaint, filed April 30, 2025 ("Complaint" or "Compl."), and drawing all reasonable inferences in favor of plaintiff Floyd Mayweather, Jr. ("Mayweather"), the Complaint adequately alleges plausible and cognizable claims for defamation (libel and libel per se), intentional infliction of emotional distress, and a prima facie tort arising from a pattern of intentional and malicious conduct.  These claims turn on disputed issues of truth, falsity, motive, malice, and reckless disregard – issues reserved for discovery and determination by the Court at the summary judgment stage, or by the jury at the time off trial.

The libel claim alleged against defendants Daniel Geiger ("Geiger") and Business Insider, Inc. ("Insider") (together, "Defendants") is not subject to dismissal at the pleading stage because the Court is required to evaluate solely the legal feasibility of the claim, not the strength of the allegations.  Additionally, the Court must consider the entire publication in context, with all statements capable of defamatory interpretation surviving dismissal.  Even materials subject to judicial notice may not be used to establish disputed facts.[2]

Construed in favor of Mayweather, the facts alleged in the Complaint are sufficient to state a claim for libel.  More specifically, the Complaint alleges that in March 2025, Geiger, a reporter employed by the Insider, undertook a calculated campaign to undermine Mayweather's business ventures and humiliate Mayweather publicly.  Geiger then published demonstrably false

---

[1] As used herein, the "Motion" refers to the "Memorandum of Law in Support of Defendants Daniel Geiger and Insider, Inc.'s Motion for Judgment on the Pleadings," filed January 14, 2026.
[2] *Infra* at 8.

statement portraying Mayweather as a fraud who engaged in deception through an exaggeration of his real estate ventures. The Complaint further alleges that Geiger acted with actual malice because, *inter alia*, he refused to review closing documents offered to him, never visited the buildings held in Mayweather's real estate portfolio, distorted off-the-record remarks, and relied on unnamed "sources" whose assertions were facially inconsistent with documents Geiger was provided but declined to review. In other words, the Complaint adequately alleges that Geiger published false information despite his knowledge of facts undermining his narrative. Furthermore, the Complaint alleges that Geiger displayed clear racial bias, and indeed, many have heard Geiger deride Mayweather as an "uneducated dropout" who "shouldn't own New York real estate." The statements that were published are defamatory per se because they impute dishonesty and injure Mayweather in his trade.[3] Accordingly, the libel claim should be allowed to proceed to the discovery phase and not dismissed.

Likewise, the facts alleged in the Complaint are sufficient to state a claim for intentional infliction of emotional distress. The Complaint alleges hundreds of unwanted calls, including late-night calls, and continued calling even after "do not call" requests. The Complaint further alleges racial insults, misrepresentations, and threats to publish false information using a widely disseminated platform, namely, the Insider. This constitutes conduct far beyond ordinary news gathering. Additionally, the question of whether Defendants engaged in "extreme and outrageous" conduct is fact-specific, rarely dismissed at the pleading stage when harassment is involved. The Complaint also alleges severe emotional distress arising from reputational collapse, massive financial harm, racial humiliation and public humiliation.[4]

---

[3] *Infra* at 9-10.
[4] *Infra* at 12-13.

Finally, the facts alleged in the Complaint are sufficient to state, in the alternative, a claim for a prima facie tort arising from the intentional infliction of harm without justification, motivated solely by malice. In support of this claim for relief, the Complaint alleges Geiger's malice was fueled not only by his racial bias, but also by his disdain for anyone who waves the MAGA flag, or who rehashes so-called "right wing talking points about Israel." The Complaint further alleges special damages exceeding $100 million, including lost investments, diminution in valuation of investments, and delayed capital raises. Under New York law, pleading a prima facie tort in the alternative is permitted, particularly when a malicious motive forms the core of the activity and conduct.[5]

For these reasons, and for the reasons set forth below, the Motion should be denied in its entirety.

## SUMMARY OF COMPLAINT

Mayweather is an athlete and entrepreneur. (Compl., ¶ 1.)[6] He has consistently demonstrated integrity and transparency in his business dealings, particularly in his ventures into real estate, which aim to empower communities through his substantial investments. (*Id.*) As alleged in the Complaint, Geiger, a reporter for the Insider, engaged in a pattern of activity and conduct comprised of harassment, aggressive and misleading journalism that not only distorts the truth but seems driven by a deep-seated bias against Mayweather's success because, among other reasons, Mayweather is an uneducated African American who supports MAGA and Israel. (Compl., ¶¶ 1, 3, 18-21.) Geiger's articles, filled with inaccuracies and devoid of any substantive evidence, have been published despite clear refutations and corrections provided by Mayweather's team. (Compl., ¶ 1.) Geiger's pattern of behavior

---

[5] *Infra* at 13.
[6] The facts set forth herein are drawn from the Complaint. Contrary to the assertions in the Motion, even materials subject to judicial notice may not be used at this stage of the litigation to establish disputed facts. *Infra* at 8.

reveals a reckless disregard for the truth, aimed at tarnishing Mayweather's reputation and undermining his business efforts, which have been nothing short of transformative for many underserved communities. (*Id.*)

More specifically, beginning in March 2025, Geiger, on behalf of the Insider, undertook a calculated campaign to undermine Mayweather's ventures and humiliate Mayweather publicly. (Compl., ¶ 2.) Geiger bombarded Mayweather's partners, employees, friends, and family with hundreds of hostile telephone calls, misrepresented himself, ignored documentary proof of ownership, and then published demonstrably false statements portraying Mayweather as a fraud who "exaggerates" his holdings. (Compl., ¶ 2.)

Geiger acted with actual malice because, *inter alia*, he refused to review closing documents offered to him, never visited the portfolio's buildings, distorted off-the-record remarks, and relied on unnamed "sources" whose assertions were facially inconsistent with documents he refused to review. (Compl., ¶ 3.) Geiger's so-called journalism was motived by profound racial bias. Indeed, many have heard that Geiger derided Mayweather as an "uneducated dropout" who "shouldn't own New York real estate." (*Id.*)[7]

The fact is that Mayweather has invested hundreds of millions in real estate holdings in New York, including affordable-housing properties in Upper Manhattan. (Compl., ¶ 12.) Transaction documents confirm Mayweather's ownership and control interest in the real-estate portfolios involved. (Compl., ¶ 13.) Beginning on or about March 3, 2025, and continuing through March 15, 2025, Mayweather and his advisors repeatedly invited Geiger to examine the executed transaction documents validating the legitimacy of his holdings. (Compl., ¶ 14.) Geiger refused every invitation to review the materials. (Compl., ¶ 15.)

Throughout March 2025, Geiger placed hundreds of calls to Mayweather's advisors, CFO, property managers, leasing agents, and even personal friends and relatives. (Compl.,

---

[7] Although Geiger denies these allegations, and purports to rely upon uncertified transcripts of telephone calls, these evidentiary matters cannot be considered at the pleading stage. *Infra* at 8-9.

5

¶ 16.)  Many calls were placed after 10 p.m. Eastern, and the recipients asked Geiger to stop, he failed to do so.  (Compl., ¶ 16.)

On March 19, 2025, Geiger twice spoke with advisor James McNair ("McNair").  After McNair terminated the call, Geiger called him back and accused McNair of being an "imposter," also threatening to publish in a derogatory article that McNair's voice "doesn't match."  (Compl., ¶ 17.)  Then, Geiger followed through on his threat and published that false insinuation.  (*Id.*)

According to the Complaint, several witnesses attest that Geiger has declared: (i) "I don't see how a school-dropout boxer winds up buying these properties"; (ii) Mayweather "should stick to sneakers and watches"; and (iii) real estate is "run by educated people who earned their way."  (Compl., ¶ 18.)  The Complaint further alleges that Geiger has made derogatory statements regarding Mayweather, "a Black guy in real estate."  (Compl., ¶ 19.)  The Complaint further alleges that Geiger has a strong preference for following people on social media who are not African Americans. (Compl., ¶ 20.)

Mayweather drew the ire of Geiger because, *inter alia*, Mayweather has repeatedly and publicly voiced support for both President Donald J. Trump and the State of Israel.  Geiger has declared he is "vehemently anti-Trump," and that he "can't stand anyone waving the MAGA flag."  (Compl., ¶ 21.)  Geiger has even mocked Mayweather for "parroting right-wing talking points about Israel."  (*Id.*)

Despite the documentation offered to demonstrate that the alleged facts are false, the Insider published Geiger's piece titled "Floyd Mayweather Jr. bragged about a $400 million property deal. There's just one problem."  (Compl., ¶ 22.)  The article falsely states, *inter alia*, that: (i) "[t]here is no evidence there has been a sale"; (ii) Mayweather "purchased only a small minority ownership interest"; (iii) Mayweather's real-estate claims are "exaggerated"; (iv) NYCHP "has not been advised of any sale."  (Compl., ¶¶ 22-23.)  The false article was published even though Geiger possessed—or recklessly ignored—documents disproving each assertion.  (Compl., ¶ 23.)

6

After the false and defamatory article was published, several institutional capital partners contacted Mayweather's team to "confirm whether Floyd really owns anything," delaying separate equity raises costing Mayweather millions of dollars in potential investment activity. (Compl., ¶ 24.) The Complaint alleges that "rumors of ownership exaggeration can suppress property valuations by 5–10%." (Compl., ¶ 27.) Applying even a 5% discount to Mayweather's holdings questioned by Geiger results in more than $21 million in damages. (Compl., ¶ 27.)

Geiger's refusal to review offered documents, reliance on unnamed sources contradicting public filings, racial bias, and admitted knowledge that a wire in the amount of $85 million was sent in furtherance of Mayweather's real estate ventures, together constitute facts sufficient to state a claim of "actual malice" for pleading purposes. (Compl., ¶ 28.) Furthermore, as alleged in the Complaint, "the volume, tone, and timing of Geiger's calls—after multiple 'do-not-call' requests—meet the "repeated conduct" threshold for intentional infliction and prima facie tort under New York law. (Compl., ¶ 29.) Geiger's remarks about Mayweather's race, education, and political views demonstrate improper motive, supporting punitive damages. (Compl., ¶ 30.) The Complaint further alleges that in contrast to the requirements for responsible reporting practices, Geiger failed to review transaction documents, failed to search UCC and other filings, and failed to seek on-site tenant verification before publishing an article accusing Mayweather of being an outright liar. (Compl., ¶ 31.)

Based on these allegations, the Complaint states three claims for relief, namely, a claim for defamation (comprised of libel and libel per se), a claim for intentional infliction of emotional distress, and a claim for the prima facie tort of malicious harassment. (Compl., ¶¶ 32-41.) The Complaint further seeks general, special and presumed damages of not less than $100,000,000, punitive damages and other legal and equitable relief. (Compl., Prayer for Relief at 8.)

# ARGUMENT

## I. APPLICABLE LEGAL STANDARDS

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). The Court must "accept all factual allegations in the complaint as true and draw all reasonable inferences" in favor of the plaintiff. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). Thus, a "motion to dismiss a complaint requires the Court to determine whether the claim as alleged, without regard to the weight of the evidence, and assuming as true all facts pleaded, states a claim for which relief can be granted." *Lasky v. Am. Broadcasting Cos., Inc.*, 606 F. Supp. 934, 938 (S.D.N.Y. 1985).

Further, applying the standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the complaint must contain enough facts to state a claim for relief that is "plausible on its face." *Palin v. New York Times Co.*, 940 F.3d 804, 810 (2d Cir. 2019). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* "A well-pleaded complaint will include facts that 'raise a right to relief above the speculative level.'" *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Lasky*, 606 F. Supp. at 938 (if publication susceptible of more than one meaning, one of which may be defamatory, then trier of fact must determine outcome, not court at pleading stage).

In deciding a motion for judgment on the pleadings, the Court cannot rely upon matters outside the Complaint unless the motion is converted to a summary judgment motion. *Id.* In this regard, even materials subject to judicial notice may not be used at this

8

stage of the litigation to establish disputed facts. *See Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). Additionally, documents presented as part of a motion for judgment on the pleadings may be considered only if they are "integral" to the Complaint, and not if they are adduced to dispute allegations in the Complaint. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F. 3d 419, 422 (2d Cir. 2011); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). "A matter is deemed 'integral' to the complaint when the complaint 'relies heavily upon its terms and effect.'" *Palin*, 940 F.3d at 811. "Typically, an integral matter is a contract, agreement, or other document essential to the litigation." *Id.* A matter cannot be deemed "integral" to the Complaint when credibility determinations are involved. *Id.* at 812.

Here, the Motion relies extensively upon the contentions of Defendants, and documents that are not "integral" to the Complaint, including uncertified transcripts of telephone calls which purport to reflect facts that contradict allegations in the Complaint. Defendants also mistakenly rely upon ACRIS, sources, and exhibits. These assertions based on matters not "integral" to the Complaint cannot be considered by the Court at this stage of the litigation. Applying the applicable legal standards set forth above to this case, the Motion should be denied.

## II. THE COMPLAINT ADEQUATELY ALLEGES A CLAIM FOR DEFAMATION (LIBEL AND LIBEL PER SE)

"Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." *Idema v. Wager*, 120 F. Supp. 2d 361, 365 (S.D.N.Y. 2000). "Under New York law, a plaintiff must establish five elements to recover in libel: (1) a written defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault (either negligence or actual malice depending on the status of the libeled party); (4) falsity of the defamatory statement; and (5) special damages or per se actionability (defamatory on its face)." *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d

163, 176 (2d Cir. 2000); *accord Palin*, 940 F.3d at 809.  A "public figure plaintiff must prove that an allegedly libelous statement was made with actual malice, that is, made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'"  *Id.*

A defamatory statement is one that exposes the plaintiff "to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or . . . induces an evil opinion of one in the minds of right-thinking persons, and . . . deprives one of  . . . confidence and friendly intercourse in society." *Karedes v. Ackerly Group, Inc*., 423 F.3d 107, 113 (2d Cir. 2005).  Furthermore, the "entire publication, as well as the circumstances of its issuance, must be considered." *Tannerite Sports LLC v. NBCUniversal News Group*, 864 F.3d 236, 243 (2d Cir. 2017).

As set forth below, all the elements of a libel claim are adequately alleged.

### A. The Complaint Adequately Alleges Actionable False Statements of Fact

A statement is actionable when it has a precise meaning; it is capable of being proven true or false; and it implies undisclosed defamatory facts.  *Gross v. New York Times Co.*, 82 N.Y.2d 146, 153 (1993).  The Complaint adequately alleges each of these elements.

As set forth above, the Complaint identifies specific, verifiable false statements, including that "there is no evidence there has been a sale," that Mayweather held only a "small minority ownership interest," that Mayweather's ownership claims were "exaggerated," and that government agencies had "not been advised of any sale."  These constitute allegations of fact, capable of being proven true or false, and not protected opinion.  They carry precise meanings concerning ownership, transactions, as well as regulatory notice, and imply undisclosed defamatory facts.  Nothing more is required at the pleading stage.

### B. The Complaint Adequately Alleges Actual Malice

Actual malice may be inferred where defendants deliberately avoid the truth or publish while entertaining serious doubts as to the truth of their statements. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989). The failure to investigate, combined with awareness of contradictory facts, supports a plausible inference of malice. *Palin*, 940 F.3d 804 at 814; *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 124 (2d Cir. 2013).

On the issue of actual malice, inferential pleading based on circumstantial evidence is sufficient at the pleading stage, and in considering the sufficiency of the allegations in the complaint, the court cannot make premature credibility determinations. *Palin*, 940 F.3d 804 at 812, 814. Thus, in *Palin*, the Second Circuit found adequate malice pleading through allegations, among others, regarding the editor's personal bias stemming from family political connections and advocacy positions, and disregard of information that contradicted the published claim. *Id.* at 813. The *Palin* court added that inferences arising from the allegations are for the jury, not the court. *Id.* at 815.

Although actual malice is subjective, "a court typically will infer actual malice from objective facts" because defendants rarely admit to publishing with actual malice. *Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 183 (2d Cir. 2000). Likewise, actual malice at the pleading stage may be predicated upon allegations that the defendants relied upon anonymous sources, were biased, and ignored pertinent information. *See Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015).

Here, the Complaint adequately alleges actual malice through the willful refusal to review offered documents; reliance on anonymous sources contradicting known facts; distortion of off-the-record remarks; hostile and racially charged statements evidencing animus; and publication despite knowledge of facts showing that the publication contained

11

statements that were false, including an $85 million wire transfer.[8] On this issue, the Complaint further alleges that executed transaction documents existed, Defendants were offered access, Defendants deliberately refused review, and the statements published directly contradicted documentary proof.. Assuming these facts as true, the Complaint should not be dismissed.

### C. The Complaint Adequately Alleges Defamation Per Se and Damages

"A statement that tends to injury another in his or her trade, business or profession is defamatory per se." *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 411 n.25 (S.D.N.Y. 2009) (citations omitted); *accord Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992). Allegations of this nature are presumptively damaging and actionable without proof of special damages. *Yesner v. Spinner*, 765 F. Supp. 48, 52 (E.D.N.Y. 1991); *see Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 179 (2d Cir. 2000).

In this case, the Complaint alleges that Mayweather was accused of being an outright fraud, a liar who is not capable or competent to own and manage New York real estate because, at least in part, he is an uneducated African American. These allegations, assuming they are true, constitute libel per se. The Complaint also adequately alleges considerable damage. At the pleading stage, the allegations form the basis for a libel per se claim for relief.

## III. THE COMPLAINT ADEQUATELY ALLEGES A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The tort of intentional infliction of emotional distress has four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. New York Post Co.*, 81

---

[8] *Supra* at __.

N.Y.2d 115, 121 (1993). Extreme and outrageous conduct is conduct that "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303, 448 (1983). In *Lovcen Const. Co. v. Culbreth*, 196 A.D.2d 445 (1993), the Appellate Division held that the defendant's repeated pattern of hundreds of harassing hang-up telephone calls was sufficiently extreme and outrageous to establish a prima facie claim for intentional infliction of emotional distress. Further, where a plaintiff is the target of "a planned program of harassment or threats," accompanied by "vindictiveness, taunting or derision," a cause of action for intentional infliction of emotional distress that includes the entire course of conduct may be established. Bonner v. Guccione, 916 F. Supp. 271, 277 (S.D.N.Y. 1996) (citations omitted). The tort is fact-specific, and therefore, not subject to resolution at the pleading stage. *See, e.g., Warner v. Druckier*, 266 A.D. 2d 2 (N.Y. 1999).

      Here, the Complaint alleges hundreds of unwanted calls (including late-night), continued contact after "do not call" requests, misrepresentation and intimidation, racially derogatory remarks, and threats to publish falsehoods. Assuming that the publication was the result of Defendants' disdain for uneducated people who fit within the category of African Americans, and particularly if they are "pro-Trump," MAGA supporters or pro-Israel, then the publication and related avidity falls squarely within the scope of outrageous misconduct actionable under the tort of intentional infliction of emotional distress. Further, Mayweather alleges severe distress resulting from reputational collapse, considerable financial harm, humiliation arising from racial discrimination and public vilification. These facts are sufficient to state a claim for intentional infliction of emotional distress, and allow the case to proceed to the discovery phase.

13

## III. THE COMPLAINT ADEQUATELY ALLEGES A PRIMA FACIA TORT ARISING FROM THE INTENTIONAL INFLICTION OF HARM WITHOUT JUSTICIATION

The elements [of prima facie tort] are intentional infliction of harm, without excuse or justification, by an act or series of acts that would otherwise be lawful, and special damages pleaded with specificity. *See Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 142-43 (1985); *Curiano v. Suozzi*, 63 N.Y.2d 113, 117 (1984). Additionally, New York law requires that the defendant's conduct be motivated solely by disinterested malevolence, meaning that the unlawful act is a "must be a malicious one unmixed with any other and exclusively directed to injury and damage of another." *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 333, 451 N.E.2d 459, 468 (1983). New York law permits pleading prima facie tort in the alternative, particularly where malicious motive is central. *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 333 (1983).

Here, the Complaint adequately alleges each element. The Complaint alleges a deliberate and sustained course of conduct designed to cause harm, undertaken without any legitimate business, legal, or social justification. The Complaint further alleges special damages exceeding $100 million, including lost investments, valuation suppression, and delayed capital raises. For pleading purposes, the allegations in the Complaint are sufficient to let stand the prima facie tort claim, in the alternative, and despite the other claims for relief.

## IV. AT A MINIMUM, LEAVE TO AMEND SHOULD BE GRANTED

The Second Circuit has cautioned against denying leave before discovery where amendment could cure defects. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 190 (2015); *accord Hayden v. Paterson*, 594 F.3d 150, 171 (2d Cir. 2010). To the extent the Motion is granted in whole or in part, leave to amend should be granted.

## V. ANTI-SLAPP AND FEE-SHIFTING DO NOT APPLY AT THIS STAGE OF THE CASE

New York's anti-SLAPP statute does not immunize defamatory speech published with actual malice. Civ. Rights Law § 76-a (2); *Palin*, 940 F.3d at 809-10. Even where anti-SLAPP applies, courts may not resolve factual disputes or weigh competing evidence on a motion to dismiss or for judgment on the pleadings. *Palin*, 940 F.3d at 812-14. Fee-shifting applies only where the moving party prevails on an anti-SLAPP motion, which is not before the Court.

## CONCLUSION

For all of the foregoing reasons, the Motion should be denied in its entirety.

Dated: February 11, 2026
      New York, NY

PORTALE RANDAZZO

By: /s/ Richard A. Portale

245 Main Street
White Plains, NY 10601
rportale@portalerandazzo.com

SAMINI BLOCK APC

By: /s/ Bobby Samini
    Bobby Samini

650 Town Center Drive
Suite 1500
Costa Mesa, CA 92626
Tel: (949) 724-0900
bobby.samini@saminilaw.com

*Attorneys for Plaintiff*
*Floyd Mayweather, Jr.*

## **CERTIFICATE OF COMPLIANCE WITH WORD COUNT**

I hereby certify that the word count of this memorandum of law complies with the word limits of Local Civil Rule 7.1(c). According to the word-processing system used to prepare this memorandum of law, the total word count for all printed text exclusive of the material omitted under Local Civil Rule 7.1(c) is 4,523 words. I certify under penalty of perjury that the foregoing is true and correct.

/s/

## **CERTIFICATE OF SERVICE**

  I hereby certify that a copy of this Memorandum of Law was delivered to all parties via ECF on **DATE**, 2026.

/s/

Dated: February 11, 2026